## GREEN *vs.* FOLEY.

1. The action of debt is maintainable in this State, on a decree in Chancery, for the payment of money rendered in another State.

2. Where the decree in such case adjudged the rate of interest to be charged on the decree, held not error, that the court, in the action of debt, in giving judgment on demurrer, gave such judgment for the interest, without the intervention of a jury.

3. Where the action on such decree, made in favor of three administrators, was brought in the name of one administrator; and his declaration averred that two of his co-administrators had been removed—held, that the action was properly brought in the name of the remaining administrator.

4. Held, not essential in such a suit, to aver that the plaintiff's intestate, had, at the time of his death, no known place of residence in this State; and that no letters of administration in this State had been sued out.

5. Whether a decree in Chancery, rendered in a country foreign to the United States, could form the ground of an action at law in this State.—*Quere?*

6. *Semble*—Decrees in Chancery, of other States, are embraced within the spirit and meaning of the constitutional provision, giving the same effect to a judgment in other States, which it has in the State where rendered.

Foley brought an action of debt in Pike Circuit court, against the plaintiff in error; and the cause of action declared on was a decree rendered in Chancery, in the State of Georgia. The decree was had in favor of Foley and two other persons, administrators of a certain estate: and the declaration alleged, that the co-administrators had been displaced; and that the plaintiff, at the time of action brought, was sole administrator, &c. On *Oyer* craved, the defendant demurred; and judgment was rendered by the Court upon the demurrer, for the amount of money specified in the decree, and interest at the rate adjudged.— And from that decision the defendant took error to this court.

*Goldthwaite* and *Gordon*, for plaintiff—*Vandergraaff, contra.*

TAYLOR, J.—This action of debt was brought by the defendant in error, against the plaintiff, in the Circuit court of Pike county, to recover a sum of money, with interest thereon, for which the defendant and John O. Abbott and John S. Raiford, as administrators of John Green, deceased, had obtained a decree in chancery in the superior court of Burke county, Georgia. It is averred in the declaration that Abbott and Raiford had been removed from the administration, and that at the commencement of this suit the plaintiff below was the sole administrator.— *Oyer* was craved of the record of the suit in Georgia, by the defendant below, and the declaration demurred to. The demurrer was overruled, and the defendant not having filed a plea, judgment was rendered by the court in favor of the plaintiff, for the sum of money specified in the decree, and interest thereon.

Four points are made by the plaintiff in error in this court.

First—That there was error in rendering judgment by the court for interest, without a jury having been empannelled to assess the damages.

Second—No actain at law can be maintained upon a decree in Chancery.

Third—The suit should have been brought in the names of all the complainants, in whose favor the decree was rendered.

Fourth—The declaration should have averred that the decedent had, at the time of his death, no known place of residence within this State, and that no administration had been sued out on his goods, &c. within this State.

To sustain the first point, reference is made to the case of *Peacock* vs. *Banks.*[a] That was a suit on a [a]Minor's R 387

note made payable in Nashville, Tennessee. Upon *nihil dicit*, the Circuit court rendered a final judgment for debt and interest. This court there said, "where a contract is made in reference to another country, it must be governed by the laws of the place where it is to have its effect; and foreign laws must be proved as facts. The court, except in special cases, is not the tribunal for the determination of facts. The laws of Tennessee, regulating the rate of interest, the Circuit court could not, judicially, know, unless from the finding of a jury, on evidence submitted to them."

The doctrine contained in this decision, has, ever since, been maintained by this court. But it is believed that this case is not affected by it, as the decree itself determines the rate at which interest is to be calculated. It has been said in argument that the rate adjudged by the court, may exceed that which is authorised by the statutes of Georgia. Possibly it may be so; but we are as much authorised to require proof to sustain any other part of the proceedings as that.

The second point is entirely new in this court, and one upon which not much can be found in the books. We are, however, not altogether without precedents, on the subject; but, few as there are, they are entirely contradictory and irreconcileable.

In a note to the case of *Post* vs. *Neafie*,[a] it is stated that Judge Chase, in the Circuit court of the United States, for the district of Connecticut, sustained a demurrer to the declaration, in a suit brought on a decree of the equity side of the superior court of that State, for the payment of money. In the case of *Hugh* vs. *Higgs and Wife*,[b] the Supreme court of the United States decided, that an action could not

[a] 3 Caine's Rep. 22.

[b] 8 Wheat. 697.

be sustained to recover money which had been de-
creed to the plaintiff by a court of Chancery, in a
matter purely equitable. The report of that case is
very short and unsatisfactory, and sheds no light up-
on the question, except so far as the mere decision
goes. The case of *Carpenter and another* vs. *Thorn-
ton,* is the only decision sustaining the same doctrine, 3 Barn. &
in which the opinions are given at length. A decree Ald. 52.
had been made in the court of Chancery of England
in favor of one Norris, of whose last will and testa-
ment the plaintiffs were executors, against the defen-
dant for a sum of money, to recover which, the suit
was brought. The ground taken by the plaintiffs, in
the argument of that cause, was, that the decree a-
mounted to an implied assumpsit of the defendant to
pay. This idea is resisted by the judges, who also
held that the demand arising upon the decree of a
court of Chancery was altogether of an equitable na-
ture, and afforded no ground for a suit at law.

In the case of *Post* vs. *Neafie*, before referred to,
the majority of the court sustained an action of this
kind, Chief Justice Kent and Justice Thompson dis-
senting; but the latter grounded his opinion on the
decisions which then prevailed in that State, which
put the judgments of the courts of other States on the
footing of foreign judgments; and as those decisions
have since been overruled, he may now be consider-
ed as agreeing with the majority.

That was an action of debt upon a decree of a court
of Chancery in New Jersey. There appears to have
been some difference of opinion, whether it was for
the payment of money simply, or whether it did not
require some other act to be done, such as making
title to a tract of land, though it was at last decided
as being for the payment of money only.

Chief Justice Kent contended, that a uniform rule of decision must be established, applicable to all cases; that it must either be determined that all chancery judgments should be the subject of jurisdiction at law, or none; and that it would, in many instances, be highly inconvenient, if not impracticable, to carry into effect the decree of a court of equity, by a suit at law. He says further, that in the common law courts of England, chancery decrees are really viewed as nothing; that they will not be received as evidence of any fact; and he cites several cases in support of these positions.

It is matter of regret that the decisions which were made in England, on the effect of Chancery judgments, during the unprofitable contests between the two jurisdictions, in the days of Elizabeth and James, should have been permitted, in subsequent times, to have the force of precedents in the common law courts. For many years, the jealousy which formerly existed between those tribunals, has ceased entirely, and the courts of King's bench, and common pleas consider the chancery as a necessary auxiliary to the common law courts. In many instances the courts of common law directly recognise the chancery jurisdiction. The every day practice of requiring an election to be made, of the tribunal in which a party will proceed, when he has sued in both courts, is one. Lord Coke would have scouted the idea of extending such a courtesy to the Lord Chancellor.

I cannot see the propriety of engrafting upon the judicial stock, scions which have been reared in the hot-bed of strife and passion; and great as is my deference for a train of precedents, especially when sustained by that able and enlightened jurist,

Chief Justice *Kent*, I cannot view the decisions which have been produced by rancorous hatred, as calculated to give symetry to our system of jurisprudence.

Nor can I perceive the soundness of the position, that courts of law should not entertain suits founded on any decrees of Chancery, because, from their structure, they cannot give effect to all. Why should there not be a distinction in this, as well as in other cases? It would seem to me almost as correct, to say that no rights shall be enforced, or wrongs redressed at law, because all cannot be, but parties must sometimes resort to equity.

But it has been urged, in argument, that these are not courts of record, and that, therefore, no action can be sustained upon their decrees. In England, in strict technicality, the Chancery is not considered a court of record, and probably this may be the doctrine in the United States; but, admitting it to be so, actions of debt are not confined to the judgments of courts of record. They are constantly brought, in England, upon the judgments of courts not of record, and here we are in the daily habit of sustaining them upon the judgments of justices of the peace, rendered in other States.

With respect to the objection, that it is an equitable demand, I think, that also, is too technical. When once the amount has been ascertained, by a judicial tribunal, to be due from one man to another, our courts of law, it seems to me, should be open for its recovery, if the demand be of a nature which these courts can enforce. This is the case, as respects foreign judgments, although they only afford *prima facie* evidence of the debt.

But, it is said, that as courts of equity are not courts of record, the whole matter might again be investigated; and, that the nature of the investigations, in courts of law, would thus be changed, and by entertaining these suits they would be converted into forums for the discussion and determination of Chancery causes. This would probably depend, in a measure, upon the rule which prevails in the State in which the decree is made. In this State, I have no doubt a decision in Chancery would be a complete bar to a subsequent suit for the same matter, between the same parties at law; and I incline to the opinion, that such would be the case in every State of the Union: and, that decrees in Chancery are embraced within the spirit and meaning of the constitutional provision, giving the same effect to a judgment in the other States, which it has in the one in which it is rendered. I am not ready to say, that the decrees of Chancery, rendered in countries foreign to the United States, could be sued on here, at law; but I am as little prepared to maintain the contrary.

Strong, however, as is my inclination to sustain such a suit, I would pause before doing so, were no authority to be found in support of my opinion; but they are as numerous as those which can be adduced against it.

In *Sadler* vs. *Robins*,[a] Lord Ellenborough decided, that on a decree of a foreign court of Chancery, directing the payment of a sum certain, assumpsit might be maintained; but not so if the amount is not ascertained. The form of the action can make no difference. Debt may be brought wherever the sum is certain.

In *Post* vs. *Neafie*, before referred to, the Supreme

[a] 1 Camp. R 253

court of New York overruled a demurrer to the de- claration in an action of debt, brought on a decree rendered in New Jersey. *Spencer*, Justice, in that case, said, " I agree with Sir Wm Blackstone, that it is im- plied by the fundamental constitution of government, that every person is bound, and hath virtually agreed, to pay such particular sums of money as are charg- ed on him by the sentence, or assessed by the inter- pretation of the law. Whatever, therefore, the laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge."

The case of *Dubois* vs. *Dubois*,[a] recognizes and sus- tains the decision in *Post* vs. *Neafie*. In that case the court say : " The principal question raised, is, whether debt will lie. On this point we are with- out any direct authority." [The action was found- ed on the decree of the surrogate of Saratoga county for the payment of a legacy by an executor.] "The general rule is, that this form of action is proper for any debt of record, or by specialty, or for any sum certain. It has been decided, that debt lies upon a decree for the payment of money, made by a court of Chancery of another State; and no doubt the action will lie upon such a decree in our domestic courts of equity. The decree of the surrogate, unappealed from, is conclusive, and determines forever the rights of the parties. It may be enforced by imprisonment; and is certainly evidence of a debt due. Whether a surrogate court is a court of record need not be de- cided."

In this State, actions of debt upon the final de- crees of the county courts, for the distribution of the estates of decedents, have always been maintained, even before those courts were authorised to enforce

[a] 6 Cowen, 494

their decrees by executions. I view those cases as almost entirely parallel with the present.

We think the decree in Georgia was a sufficient foundation for the action of debt.

We next come to consider the third point, viz : that the two removed administrators should have been joined with the defendant in error, as plaintiffs below.

The case of *Biddle* vs. *Wilkins*,[a] has been cited to show, that after a judgment is recovered by representatives, on a debt originally due to the decedent; the interest in the judgment is vested in the representatives, in their own right, and they are authorised to sue upon it, in their own names, without describing themselves by their representative character.

We are perfectly aware of the soundness of this doctrine. After the judgment is recovered, the situation of the parties is the same as if the defendant had given to the plaintiff his note or bond for a debt due to the decedent : in this case it is evident the plaintiff in a suit, on such instrument, need not describe himself as representative.

Other authorities have been adduced to prove that all the parties in interest, in actions *ex contractu*, must be parties to the suit.

This too, as a general rule, can not be controverted. It is a necessary one for several reasons; one is, that the record may be evidence of the cause of action, and thus, recoveries may afterwards be prevented, upon the same contract; another, to avoid a multiplicity of suits.

But where there is a joint cause of action, and one of the parties dies, the right to sue, or the liability to be sued, survives to, or against, those who remain

[a] 1 Peters, 687

alive. In the case before us, if Abbott & Raiford had died before suit brought, it would be admitted that the action was well brought, in the name of Foley; are they not dead as respects their representative character? This is acknowledged; but it is insisted that they are individually entitled to the amount of the decree. This is true; but we can not shut our eyes to the fact that they would be bound to distribute this money, after its collection, as representatives, and that the defendant in error would be entitled to recover the whole amount which Abbott and Raiford might receive of the debt, had the action been joint. This is a circuity of action which could not be made necessary by judicial decisions. To require that suit should be brought in the name of the three, that Abbott and Raiford might be authorised to collect that, which the law would immmediately give an action, to the defendant in error, to recover from them, would be evidently departing from that wise rule which requires, that rights shall, as near as possible, be settled by one suit. The case of *Turner* vs. *Daievs*,[a] is directly in point on this subject. That was an *audita querula* in the King's Bench, which [a] 2 Saund. 139 set out that the administration had been committed to the defendant, of the goods, &c. of one Edmund Spice, that as such administrator, defendant had sued the plaintiff, and recovered a judgment against him; that afterwards, upon an appeal to the delegates, the administration had been repealed, and committed to another, "by reason whereof the now defendant ought not to have any execution on the judgment against the now plaintiff." The defendant pleaded that he had recovered the judgment before he was cited upon the appeal to repeal his letters of administration;

to which plea the plaintiff demurred. *Kelynge*, Chief Justice, said, "the law abhors circuity of action: and here there will be a circuity of action, if the now defendant should sue out execution and receive the money. For it was clear, he said, that the new administration would recover it again, against the now defendant. And, therefore, to avoid circuity of action, the now plaintiff should be discharged against the now defendant, from the said judgment, and be chargeable to the new administration, for the value of the goods converted." And such was the opinion of the whole court.

It is evident that the recovery in this case is assets, and that it must be distributed as the rest of the estate; it would seem reasonable therefore, that it should go into the hands of him who has to make the distribution.

It has been argued that it would impose an unreasonable burden upon the plaintiff in error, to require of him to disprove the allegation of the removal of Abbott and Raiford from the administration. But the force of this objection we do not perceive. If they have been removed it is a matter of record, and it devolves on the plaintiff below, to show his right to recover. The removal of his co-administrators was an allegation necessary to his declaration, and the proof of it, but for the demurrer, must have been made. We do not say that the proof could have been required without a plea in abatement; that point does not come before us, and is not decided; but certainly it was in the power of the defendant, below, by proper pleading, to have required its production.

For these reasons the action was well brought in the name of the defendant in error.

On the fourth point, it is necessary to say but little.

The interest in the decree was vested in the plaintiff in his own right. He must be viewed in every respect, as the survivor would be, if the other administrators, who, with him, recovered the decree, had died. Therefore, even if a foreign administrator, when suing in our courts, would be required to make the averments contended for, which we do not determine, they were not necessary in this case.

The judgment is affirmed.